```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS


                              )
AARON COMMEY,                 )
                              )
        Plaintiff,            )
                              )    CIVIL NO. 11-CV-40164-PBS
     v.                       )
                              )
UNITED STATES OF AMERICA,     )
et al.,                       )
                              )
        Defendants.           )
                              )
```

**MEMORANDUM AND ORDER**

May 21, 2012

Saris, U.S.D.J.

### I. Introduction

Plaintiff[1] Aaron Commey, a person civilly committed to the Federal Bureau of Prisons, challenges threatened discipline based on his refusal to provide a DNA sample for a national database, under the DNA Analysis Backlog Elimination Act of 2000 ("DNA Act"), 42 U.S.C. § 14135a et seq., and applicable regulations. Commey contends that he is not required to provide a DNA sample because he was found not guilty by reason of insanity, and that any such requirement would violate his Fourth Amendment rights.

---

[1] Plaintiff was originally proceeding pro se. The court appointed counsel because the petition raised an important and novel issue.

1

Commey brought an ex parte motion for a temporary restraining order. On August 29, 2011, the Court denied Commey's ex parte motion. At oral argument on April 23, 2012, the parties agreed to treat this issue as a motion to dismiss. The motion is now fully briefed. After review of the record, the Court **ALLOWS** the Government's motion.

## II. Background

**A. Factual Background**

On July 28, 2000, Commey was arrested for attempting to hijack an airplane at JFK airport in New York City. On September 23, 2003, he was found not guilty by reason of insanity, and has been committed to the custody of the Attorney General at FMC Devens in Massachusetts. Since approximately December 2010, Commey has repeatedly declined to provide a DNA sample because he contends the DNA Act and applicable regulations do not apply to him.

In May 2011, Commey was informed that he would be subject to disciplinary action if he continued to refuse to provide his DNA. He filed an administrative grievance. On August 5, 2011, while his administrative grievance was still pending, he was issued a disciplinary incident report for refusing to provide DNA. He is currently facing the possibility of sanctions, including up to six months in segregation, loss of phone and visiting privileges, and monetary fines.

**B. Statutory Background**

As initially passed in 2000, the DNA Act required that the Bureau of Prisons ("BOP") collect a DNA sample "from each individual in the custody of the Bureau of Prisons who is, or has been, convicted of a qualifying Federal offense," and that the probation office collect a sample from "an individual on probation, parole or supervised release" who is, or has been, convicted of a qualifying Federal offense. 42 U.S.C. §§ 14135a(a)(1)(B) & (2). The term "qualifying Federal offense" includes, among other things, any felony and "crime of violence." Id. § 14135a(d).

Congress expanded the reach of the Act in 2006, allowing the Attorney General to "collect DNA samples from individuals who are arrested, facing charges, or convicted or from non-United States persons who are detained under the authority of the United States." 42 U.S.C. § 14135a(a)(1)(A). The amendment did not contain a limitation that the individual be arrested, charged or convicted of a "qualifying Federal offense."

After collection, the DNA sample is provided to the Federal Bureau of Investigation for analysis and inclusion in the Combined DNA Index System ("CODIS"), a centralized system that includes offender profiles obtained through federal, state and territorial DNA collection programs, as well as forensic profiles

drawn from crime scene evidence.  See 42 U.S.C. § 14135a(b); 42 U.S.C. § 14132(a).

The expansion went into effect with the promulgation of regulations by the Attorney General effective January 9, 2009. See 28 C.F.R. § 28.12.  In relevant part, the regulations provide that "[a]ny agency of the United States that arrests or detains individuals or supervises individuals facing charges shall collect DNA samples from individuals who are arrested, facing charges, or convicted."  Id. § 28.12(b).  The regulations also recognize the Attorney General's authority to limit the individuals from whom DNA is collected: "Unless otherwise directed by the Attorney General, the collection of DNA samples under this paragraph may be limited to individuals from whom the agency collects fingerprints and may be subject to other limitations or exceptions approved by the Attorney General."  Id. While the DNA Act permits the collection of DNA samples from individuals who are arrested or facing charges, the regulation mandates such collection.  Compare 42 U.S.C. § 14135a(a)(1)(A) with 28 C.F.R. § 28.12(b).

The DNA Act also mandates the expungement of DNA samples of individuals if their "conviction has been overturned," or "charge has been dismissed or has resulted in an acquittal or . . . no charge was filed within the applicable time period."  42 U.S.C. §§ 14132(d)(1)(A)(I)-(ii).

4

The DNA Act does not mention civilly committed persons who were arrested prior to the effective date of the 2006 amendment, faced charges, and were found not guilty only by reason of insanity under the Insanity Defense Reform Act of 1984, 18 U.S.C. §§ 17, 4241-4247.

## III. Discussion

### A. Standard of Review

The plaintiff's burden is to plead "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)). In considering the adequacy of pleadings, a court must take as true the factual allegations in the plaintiff's pleadings and must make all reasonable inferences in favor of the plaintiff. Rivera v. Rhode Island, 402 F.3d 27, 33 (1st Cir. 2005).

### B. The DNA Act

Commey contends that the government does not have authority to collect his DNA sample because according to the plain language of the DNA Act, it does not apply to individuals in BOP custody who were found not guilty by reason of insanity. The government contends it has authority because plaintiff is a person "arrested" under federal authority, who remains in custody, and

5

subject to further proceedings in which DNA information may be relevant.

Whether or not Commey "is arrested" pursuant to the DNA Act presents a question of statutory interpretation.  "Statutory interpretation begins with the language of the statute."  Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 8 (1st Cir. 2007).  "Absent some indication that the words of a statute have an 'exotic meaning,' [courts should] assume that the language employed carries its usual and ordinary meaning."  United States v. DiTomasso, 621 F.3d 17, 22 (1st Cir. 2010) (quoting SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (en banc)).  "If the meaning of the text is plain, [courts] generally need go no further."  DiTomasso, 621 F.3d at 22.  "[P]lain meaning sometimes must yield if its application would bring about results that are either absurd or antithetical to Congress's discernible intent."  In re Hill, 562 F.3d 29, 32 (1st Cir. 2009).

The term "arrest" is not defined in the DNA Act.  The definition of "arrest" in Black's Law Dictionary is the "taking or keeping of a person in custody by legal authority, [especially] in response to a criminal charge; [specifically], the apprehension of someone for the purpose of securing the administration of the law, [especially] of bringing that person before a court."  Black's Law Dictionary 124 (9th ed. 2009).  In 4 Blackstone Commentaries 289, the definition of arrest is, "the

6

apprehending or restraining of one's person in order to answer to an alleged crime." The American Law Institute, Code of Criminal Procedure, § 18 (1931) states, "An arrest is the taking of a person into custody that he may be forthcoming to answer in the commission of any offense."

In other contexts, the definition of arrest has been cabined to mean the beginning of a criminal prosecution and applies to the early stages of custody. See Terry v. Ohio, 392 U.S. 1 (1968) ("An arrest is the initial stage of a criminal prosecution."); Graham v. Connor, 490 U.S. 386, 395 n. 10 (1989) (declining to resolve the question "whether the Fourth Amendment continues to provide individuals with protection against the deliberate use of excessive force *beyond the point at which arrest ends and pretrial detention begins . . .*")(emphasis added); see generally Restatement (Second) of Torts § 112 (1977) ("An arrest is the taking of another into the custody of the actor for the actual or purported purpose of bringing the other before a court, or of otherwise securing the administration of the law."); Kent B. Smith, Criminal Practice and Procedure, 30 Mass. Proc. 93.6 (3d ed. 2011) (quoting a Supreme Court definition of arrest to mean the initial stage of a criminal prosecution).

In the government's view, one's status as an "arrestee" has no temporal limitation so long as an individual has remained in

custody.  To support this definition that arrest is a status that can last indefinitely, it relies on the definition contained in Black's Law Dictionary, that arrest can mean the "keeping" of a person in custody by legal authority in response to criminal charges.  Consistent with this definition, courts have permitted DNA samples to be taken after a defendant has been taken into custody.  See, e.g., United States v. Shavlovsky, 2011 U.S. Dist. LEXIS 130628, *4-5 (E.D. Cal. Nov. 9, 2011) (stating that arrestee provision of DNA Act authorizes government to collect DNA at criminal defendant's arraignment soon after her arrest); United States v. Pool, 645 F. Supp. 2d 903, 912 (E.D. Cal. 2009) (stating that, under the DNA Act, an arrestee's "DNA will be taken during the identification process after the arrest").

However, the statutory scheme indicates that the government's definition of arrestee is too capacious to the extent it seeks to include persons even after their criminal charges have been resolved.  Under the statute, if a defendant in BOP custody "is, or has been, convicted of a qualifying Federal offense," the Director of the BOP "shall collect a DNA sample." 42 U.S.C. § 14135a(a)(1)(B); see also id. § 14135a(a)(1)(A) (permitting the Attorney General to collect DNA samples from individuals in custody who are convicted of crimes).  As such, the DNA Act's arrestee provision no longer appears to apply once an individual has been convicted.

Plaintiff argues that the statutory term "arrest" cannot reach individuals who were arrested in the past but whose charges have been resolved because the arrestee provision of the DNA Act uses the present tense, authorizing the collection of DNA "from individuals who are arrested . . ." 42 U.S.C. § 14135a(a)(1)(A); cf. United States v. Mitchell, 652 F.3d 387, 397 (3d Cir. 2011)(stating that government would not have authority to take DNA of "arrestees" or "pretrial detainees" after trial had concluded "regardless of the trial's outcome")(internal quotation omitted). The subsequent provision regarding convicted individuals uses both the present and present perfect tenses, requiring the collection of DNA "from each individual . . . who is, *or has been*, convicted . . ." 42 U.S.C. § 14135a(a)(1)(B) (emphasis added). If Congress intended the DNA Act to apply to individuals in BOP custody who, like Commey, have been arrested, plaintiff argues, it could have used the present perfect tense in the arrestee provision, but instead it chose to use only the present tense. See Dole Food Co. v. Patrickson, 538 U.S. 468, 478 (2003) (holding plain text of statutory provision required certain interpretation "because it is expressed in the present tense"); Ingalls Shipbuilding v. Dir., 519 U.S. 248, 255 (1997) (relying on Congress' "use of the present tense" of key word to determine plain meaning of statute); Cf. Whitfield v. United States, 543 U.S. 209, 216 (2005) (rejecting party's

interpretation of statute where "Congress . . . clearly demonstrat[ed] that it knows how to impose such a requirement . . . [but] has chosen *not* to do so . . .") (emphasis in original).

The government argues that the statutory scheme supports its theory that arrestee status is indefinite because the expungement provision in 42 U.S.C. § 14132(d)(i)(A)(ii) allows for expungement on three grounds: dismissal of the charges, acquittal, or if "no charge was filed within the applicable time period." Under this last ground, a person has no right to expungement as long as the statute of limitations has not run. This argument is not persuasive because it governs the expungement of a DNA sample from the database, not the initial taking of the data.

Given the common usage of the term arrest in every day parlance, the caselaw, and the statutory scheme, the court concludes that Commey is not an arrestee indefinitely simply because he remains in custody.

Still, "nothing is better settled, than that statutes should receive a sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or absurd conclusion." In re Chapman, 166 U.S. 661, 667 (1897); see also Johnson v. United States, 529 U.S. 694, 706 (2000) (using an unconventional dictionary definition of statutory term

to avoid an absurd result). The legislative history demonstrates that the DNA Act was not enacted for punitive reasons. See United States v. Reynard, 473 F.3d 1008, 1019 (9th Cir. 2007). To the contrary, its goal was to "assist[] law enforcement by matching DNA evidence with possible suspects . . . in unsolved violent crimes." 146 Cong. Rec. H8572-01, H8577 (statement of Rep. Gilman). The Act would "save lives by allowing apprehension and detention of dangerous individuals while eliminating the prospects that innocent individuals would be wrongly held for crimes that they did not commit." 146 Cong. Rec. H8572-01, H8576 (statement of Rep. Scott). Congressional intent when adding the arrestee provision to the DNA Act was to expand law enforcement's ability to collect DNA at the time of arrest and create an "all-arrestee database." 151 Cong. Rec. S13756 (daily ed. Dec. 16, 2005) (statement of Sen. Kyl); see also id. S13757 (stating purpose of adding arrestee provision is to allow law enforcement agencies to collect DNA "as soon as someone is arrested . . . as part of the booking procedure"); id. S13766 (section summary of arrestee provision) ("This provision would expand [the federal government's] authority to permit the Attorney General to collect DNA at arrest."); DNA-Sample Collection and Biological Evidence Preservation in the Federal Jurisdiction, 73 Fed. Reg. 74932, 74934 (Dec. 10, 2008) (to be codified at 28 C.F.R. pt. 28)

(describing multiple important purposes for collecting "DNA samples at or near the time of arrest").

There is no doubt that if Commey, charged with attempting to hijack a plane, was arrested after the DNA Act had been amended in 2006, rather than in 2000, the government would have been authorized to take his DNA. So, the question is: did the failure of Congress to use the present perfect tense "has been arrested" in the DNA Act evince an intent to exclude persons who were arrested before 2006 but remain civilly committed in BOP custody because they were found not guilty by reason of insanity.

This motion represents an unusually difficult question because plaintiff is not currently an "arrestee," a person facing charges, a convicted person, an acquittee or on pretrial or supervised release. Neither the parties nor the court could find any mention in the statutory scheme or regulations of civilly committed persons who are found not guilty by reason of insanity but have remained in continuous custody since an arrest that predated the 2006 amendment. However, Congress's intent was plainly to collect DNA from all persons in BOP custody, from arrest through supervised release. In light of Congressional intent, it would yield an absurd result to hold that DNA evidence cannot be collected from someone who was arrested before 2006, found factually guilty of a serious violent crime but determined not guilty only by reason of insanity, and remains in BOP custody. While the exception to the plain meaning doctrine is

rare, the Court concludes that a person who was arrested and is still in BOP custody due to a civil commitment based on not guilty only by reason of insanity falls within the class of persons in custody required to give a sample under the DNA Act.

**C. Constitutional Claims**

Commey also argues that the DNA Act violates his Fourth Amendment rights.[2] Courts of Appeals have rejected similar Fourth Amendment challenges to mandatory DNA collecting. See, e.g., Haskell v. Harris, 669 F.3d 1049, 1051 (9th Cir. 2012)(arrestees); United States v. Mitchell, 652 F.3d 387, 416 (3d Cir. 2011)(arrestees and pretrial detainees); Kaemmerling v. Lappin, 553 F.3d 669, 686 (D.C. Cir. 2008) (convicted persons); United States v. Weikert, 504 F.3d 1, 14 (1st Cir. 2007) (supervised releasees); Banks v. United States, 490 F.3d 1178, 1193 (10th Cir. 2007)(probationers).

No court has addressed the constitutionality of the DNA Act as applied to individuals civilly committed to BOP custody after being found not guilty by reason of insanity. In Weikert, the First Circuit applied the general Fourth Amendment totality of the circumstances analysis, balancing Weikert's expectation of

---

[2] In his complaint, Commey asserts that the DNA Act violates the Commerce Clause and the Necessary and Proper Clause of the Constitution. Those assertions were not mentioned in any briefing and therefore will not be considered.

privacy against the government's interest in taking his DNA.  504 F.3d at 11.  Applying this analysis to Commey, civilly committed persons have a diminished expectation of privacy.  Both the Supreme Court and First Circuit have compared the liberty interests of civilly committed persons to those of pretrial detainees.  See Youngberg v. Romeo, 457 U.S. 307, 320 (1982); Davis v. Rennie, 264 F.3d 86, 102, 108 (1st Cir. 2001) (applying to civilly committed persons the legal standard for Fourth Amendment seizure claims brought by pretrial detainees).  The Eighth Circuit has explicitly held that, when considering whether a particular search violates the Fourth Amendment, civilly committed persons have the same expectation of privacy as pretrial detainees.  See Serna v. Goodno, 567 F.3d 944, 948-49 (8th Cir. 2009).  In Mitchell, the Third Circuit balanced pretrial detainees' expectation of privacy against the government's interest in taking their DNA, and held that the DNA Act does not violate pretrial detainees' Fourth Amendment rights. 652 F.3d at 416.

     Based on this caselaw, the court concludes that the government's important interests in monitoring and rehabilitating civilly committed persons, solving crimes, and exonerating innocent individuals outweigh Commey's privacy interests, given his status as a civilly committed person, "the relatively minimal inconvenience occasioned by a blood draw, and the coding of

genetic information that, by statute, may be used only for purposes of identification." <u>Weikert</u>, 504 F.3d at 14. Therefore, the DNA Act as applied to Commey does not violate the Fourth Amendment.

**IV. Order**

The Motion to Dismiss (Docket No. 27) is **ALLOWED**.

                             <u>/s/ PATTI B. SARIS</u>
                             PATTI B. SARIS
                             United States District Judge